UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Travis Lee Hamrick, | ) | C/A No. 7:24-cv-0145-TMC-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Hampton Alexander Knapp, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Travis Lee Hamrick ("Plaintiff"), through counsel, filed this action pursuant to 42 U.S.C. § 1983 for events arising from his arrest by Hampton Alexander Knapp ("Defendant"). The undersigned United States Magistrate Judge is authorized to consider all pretrial motions in this case and submit findings and recommendations to the district court under 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B) (D.S.C.). Before the Court is Defendant's Motion for Summary Judgment. ECF No. 36. For the reasons below, the Motion should be granted.

## BACKGROUND

**Procedural History**

Plaintiff commenced this action by filing a Complaint on January 8, 2024. ECF No. 1. Plaintiff attached to his Complaint various documents, including a purported transcript from Defendant's body camera (ECF No. 1-1), a t-shirt advertisement (ECF No. 1-2), the statement of Jaqueline Bailey ("Bailey") (ECF No. 1-3), and an arrest warrant (ECF No. 1-4). Defendant filed an Answer to the Complaint on January 31, 2024. ECF No. 7.

On August 5, 2025, Defendant filed a Motion for Summary Judgment. ECF No. 36. On August 20, 2025, Plaintiff filed a Response in Opposition to Defendants' Motion. ECF No. 38. On August 29, 2025, Defendant filed a Reply. ECF No. 41. This Motion is ripe for review.

1

**Factual Allegations**[1]

Plaintiff makes the following allegations in the Complaint. ECF No. 1. Plaintiff was the owner/operator of a boarding house in Spartanburg County in April 2019. *Id.* at 2, ¶ 5. At that time, five guests were residing in Plaintiff's boarding house, including Bailey and Tony Leon ("Leon"). *Id.* at 2, ¶ 6. In response to a 911 call, Defendant went to the boarding house on April 18, 2019, at approximately 7:45 p.m.. *Id.* at 2, ¶ 7. When Defendant arrived, Plaintiff was inside the boarding house and Bailey and Leon were outside the boarding house. *Id.* at 2, ¶ 8. Bailey made the following statements to Defendant, as recorded on Defendant's body camera:

- Bailey explained that she was concerned with Plaintiff's mental health and state of mind. She described him as becoming increasingly agitated.

- Bailey stated that Plaintiff, who is a former Marine and Iraq war veteran, told her that he has planned three ways to kill everyone.

- Bailey told Defendant that she asked Plaintiff if he had planned how to kill her, and he replied that it would be in a bad way.

- Bailey stated that she felt unsafe.

- Bailey asked if she could sign papers to have Plaintiff examined to be committed to a mental health facility.

- Bailey stated that Plaintiff took her phone but denied that this was to prevent her from calling authorities.

- Bailey denied that Plaintiff prevented her from leaving.

---

[1] The Court summarizes the allegations from the Complaint, some of which are disputed by Defendant, to provide a factual background giving rise to Plaintiff's claims. The Court addresses both the disputed and undisputed facts relevant to the Court's decision in the analysis section below.

*Id*. at 2–3, ¶ 9.  Bailey provided a written statement consistent with these statements and also stated that Plaintiff "threw a glass in the yard over her head" and that Leon observed Plaintiff break the glass.  *Id*. at 3, ¶ 10.

Plaintiff alleges as follows:

> On April 18, 2019, [Defendant] applied for ("Swore Out") an Arrest Warrant for Domestic Violence 2nd Degree, which was approved and granted by a magistrate, naming [Plaintiff] as the defendant. The affidavit for the warrant states, "Based on the Affiant's investigation, there is probable cause to believe the within [Plaintiff] did commit the offence of domestic violence 2nd degree by taking the victims (JB) cell phone and making threats stating he would kill the victim 'in a very bad way' causing the victim to fear for her safety.  [Plaintiff] also threw a glass cup towards the victim that narrowly missed striking her head.  [Plaintiff] and the victim have cohabitated sporadically over the past two years.  This incident did occur within the city limits of Greer, Spartanburg County, S.C."

*Id*. at 4, ¶ 11.  Plaintiff asserts that Defendant understood when he swore out the affidavit for Plaintiff's arrest that an "offer or attempt to do harm" is an essential element of a domestic violence charge.  *Id*. at 5, ¶ 14.  Plaintiff contends that Defendant understood that Plaintiff's response to Bailey's question, "do you have a plan of how to kill me," was not an offer or attempt to do her harm.  *Id*. at 5, ¶ 15.  Defendant understood the significance of Bailey's denial that Plaintiff's taking her phone was for the purpose of preventing her from calling authorities and that her denial ruled out probable cause for charging second degree domestic violence.  *Id*. at 5, ¶ 16.

Plaintiff alleges that, when Defendant applied for the arrest warrant, he willfully provided a false affidavit in that he alleged as follows:

- Defendant alleged that Plaintiff threatened Bailey when it was clear to Defendant that Bailey alleged Plaintiff expressed a hypothetical plan to kill Bailey without any present intent to act on such a plan and when Defendant understood it was not a threat and certainly not an offer or attempt to harm Bailey.

3

- Defendant alleged that Plaintiff threw a glass at Bailey, narrowly missing her head, when Defendant knew that Bailey alleged Plaintiff threw a glass over her head, but she never said the glass narrowly missed her.

- Defendant alleged that Plaintiff took Bailey's phone, knowing that Bailey had denied that it was for the purpose of preventing her from calling authorities, and Defendant's failure to disclose this denial to the magistrate judge was deceptive and amounts to a false statement.

*Id*. at 6–7, ¶ 17.

Plaintiff asserts there was not probable cause to arrest and prosecute Plaintiff for domestic violence or for second degree domestic violence. *Id*. at 6, ¶ 18. Nevertheless, Plaintiff served over two years on home incarceration based on the prosecution by Defendant. *Id*. at 6, ¶ 19. Plaintiff was arrested on April 19, 2019, and was released on bond April 23, 2019, to house arrest pursuant to the South Carolina Home Incarceration Program ("HIP"). *Id*. at 6, ¶ 20. The State of South Carolina indicted Plaintiff for second degree domestic violence on April 23, 2021. *Id*. at 6, ¶ 21. Then, on August 25, 2021, the State indicted Plaintiff for aggravated breach of peace based on the events that occurred on April 18, 2019. *Id*. at 6, ¶ 22. On January 6, 2022, Plaintiff was tried before a jury on the aggravated breach of peace charge and was found not guilty. *Id*. at 7, ¶ 23. On January 7, 2022, the State *nolle prossed* Plaintiff's second-degree domestic violence charge. *Id*. at 7, ¶ 24. Plaintiff remained on house arrest pursuant to HIP from April 23, 2019, until January 6, 2022. *Id*. at 7, ¶ 25.

As to his injuries, Plaintiff asserts as follows:

> At the time of his arrest, Plaintiff had previously entered into a contract to provide security services in Basra Iraq. The contract was to pay Plaintiff two-million-eighty-five-thousand dollars ($2,085,000.00) monthly for 5 years. Plaintiff developed a business plan that included hiring employees to carry out the contract. Pursuant to Plaintiff's business plan, Plaintiff's income after

> expenses would have ranged from 7.5 million dollars to approximately 15 million dollars. Plaintiff had additional opportunities for his company to provide security services in and around Iraq. Plaintiff's arrest and prosecution as described herein prevented Plaintiff from fulfilling his obligations under the contract, and effectively prevented him from pursuing his other business opportunities.

*Id*. at 7, ¶ 26.

Based on these allegations, Plaintiff asserts a single cause of action against Defendant under § 1983 for malicious prosecution. *Id*. at 7, ¶¶ 27–33. Plaintiff contends that Defendant, with malicious intent, "swore out" a warrant for Plaintiff's arrest. *Id*. at 7, ¶ 28. According to Plaintiff, no probable cause existed for the arrest warrant obtained by Defendant. *Id*. at 8, ¶ 29. By applying to the arrest warrant, according to Plaintiff, Defendant "initiated a prosecution of the Plaintiff." *Id*. at 8, ¶ 30. The prosecution, however, was terminated in Plaintiff's favor. *Id*. at 8, ¶ 31. As a result, Defendant deprived Plaintiff of his liberty in violation of the Fourth Amendment. *Id*. at 8, ¶ 32. Plaintiff suffered mental anguish, shame, humiliation, damage to reputation, loss of quality of life, attorneys' fees, costs of litigation, lost income, and loss of business opportunities. *Id*. at 8, ¶ 33. For his relief, Plaintiff seeks judgment against Defendant. *Id*. at 8.

## APPLICABLE LAW

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine"

if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Requirements for a Cause of Action Under § 1983**

Certain claims in this action are filed pursuant to § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v.*

*Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).  Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

## THE PARTIES' POSITIONS

Defendant moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 36.  Defendant makes the following arguments in support of his Motion.  ECF No. 36-1.  Plaintiff's malicious prosecution claim fails as a matter of law because Defendant had probable cause to arrest Plaintiff.  *Id*. at 8–11.  Plaintiff's malicious prosecution claim fails as a matter of law because he has not shown a favorable outcome.  *Id*. at 11–12.  Plaintiff's claim is barred by the doctrines of res judicata and collateral estoppel.  *Id*. at 12–15.

In Response, Plaintiff argues that Defendant lacked probable cause to arrest and prosecute Plaintiff, ECF No. 38 at 2–4; Defendant has not raised the issue of qualified immunity, *id*. at 4; and Plaintiff's claims are not barred by res judicata and collateral estoppel, *id*. at 4–6.

In Reply, Defendant argues that Plaintiff threatened Bailey, ECF No. 41 at 1–2; Defendant is entitled to qualified immunity, *id*. at 2; Plaintiff's claims are barred by res judicata and collateral estoppel, *id*. at 3; and Defendant had probable cause to arrest Plaintiff, *id*. at 4–6.

## ANALYSIS

### Undisputed Facts[2]

Based on a review of the record, the Court notes the following pertinent facts, which are not in dispute. Defendant responded to Plaintiff's home on April 18, 2019, in response to a 911 call pertaining to a "disturbance between roommates and landlords inside of the home." ECF No. 36-8 at 3. Upon arriving at Plaintiff's home, Defendant interacted with four individuals—Plaintiff, Bailey, Leon, and Justin Seningen ("Seningen")—all outside the home. *Id*. at 4. All four individuals lived in the home. *Id*. Leon, who made the 911 call, stated that Plaintiff, who was the "landlord," had been in an altercation with the other three occupants of the home, after drinking approximately one entire bottle of Remy Martin Cognac. *Id*. Defendant had prior interactions with Plaintiff and knew him to be a heavy drinker and to suffer from PTSD based on his prior military experience as a Marine Corps sniper. *Id*.

Seningen and Leon informed Defendant that Plaintiff had been making threats to kill various people and statements about harming Muslims and children. *Id*. While Defendant was speaking with Leon and Seningen, Plaintiff appeared upset about his roommates making contact with law enforcement, was cussing, and was telling Leon and Seningen to leave and not come back to the residence. *Id*. Plaintiff then went into the home. *Id*. Bailey, who was Plaintiff's live-in

---

[2] This section of undisputed facts contains statements by various individuals during the course of Defendant's investigation. While Plaintiff may dispute the truth of the statements made, it is undisputed that these statements were made to Defendant during his investigation.

girlfriend, informed Defendant that Plaintiff had become upset with her after she arrived home from work. *Id.*

Bailey then recounted the following events to Defendant that had occurred prior to the 911 call. *Id.* Bailey had informed Plaintiff that she wanted to leave because he was highly intoxicated and acting out. *Id.* At that point, Plaintiff had become upset with her and took her cell phone and keys. *Id.* Plaintiff then threw a glass cup over her head. *Id.* Plaintiff had made comments about having a plan to kill multiple people. *Id.* Bailey asked Plaintiff if he had a plan to kill her, to which he responded, "it would be in a very bad way." *Id.*

Throughout the encounter with Defendant, Bailey stated multiple times that she was in fear for her safety and in fear of her life. *Id.* Leon showed Defendant a video of Plaintiff acting out and cussing in the road, yelling "allahu akbar" multiple times.[3] *Id.* While Defendant was speaking to Seningen, Bailey, and Leon, Plaintiff changed the lock on the door to the home and Defendant had no further contact with him at that time. *Id.*

Defendant's interactions with these individuals, along with the statements described above, were recorded on Defendant's body camera. ECF No. 36-6.

Bailey provided the following written statement:

> I am [Plaintiff's] girlfriend and have lived here off and on for two years. I came home tonight around 5pm to discover [Plaintiff] drunk. He told me he had been drinking Remy Cognac and had cleaned. I thought everything was ok so I began working on laptop outside when he began appearing extremely intoxicated because he kept getting in my face (nose to nose) talking about his purpose to murder Islams. He threw a glass in yard over my head. I went inside because I was terrified and he followed. [Leon] was in the Kitchen

---

[3] Defendant has provided a copy of that video in support of his Motion for Summary Judgment. ECF No. 36-7. The video, which was captured on a cellphone, lasts approximately 1 minute and 41 seconds. *Id.* The video shows Plaintiff, who appears highly agitated, yelling, cussing, making racially charged comments, and making obscene gestures. *Id.* The video also shows Plaintiff approaching Bailey and yelling in her face. *Id.*

9

> and witness him break glasses and throw them. He followed me outside then and continue talking about his mission to murder and I then asked ok, how would you kill me. He stated it would "be in a bad way." He also stated he had no desire to live anymore.

ECF No. 36-8 at 11–12.

Leon provided the following written statement:

> [Plaintiff] was threatening to kill people. I feared for another person's wellbeing and life and I called police to come handle the situation.

ECF No. 36-8 at 13.

Based on these events and statements, as detailed in an Incident Report, Defendant concluded as follows:

> Bailey explained that she and [Plaintiff] had lived together on and off for two years, making them household members. Due to the fact that [Plaintiff] had taken Bailey's cellphone, preventing her to make contact with Law Enforcement and that [Plaintiff] had threatened and attempted to throw a glass at Bailey, a warrant for Domestic violence 2nd will be requested.

ECF No. 36-8 at 4.

On April 18, 2019, Defendant secured an arrest warrant for Plaintiff for the crime of domestic violence, second degree. ECF No. 36-8 at 14. That warrant, which was signed by Magistrate Judge Denise Livingston, provided the following affidavit of probable cause:

> Based on the Affiant's investigation, there is probable cause to believe the within named Defendant did commit the offense of domestic violence 2nd degree by taking the Victim's (JB) cell phone and making threats stating he would kill the victim "in a very bad way" causing the victim to fear for her safety. The Defendant also threw a glass cup towards the victim that narrowly missed striking her head. The Defendant and the victim have cohabitated sporadically over the past two years. This incident did occur within the city limits of Greer, Spartanburg County, SC.

*Id.* Plaintiff was arrested on April 19, 2019, at approximately 3:00 p.m., at his home and was transported to a detention center in Greer where he was served with the arrest warrant. ECF No. 36-8 at 7.

On April 1, 2021, the Spartanburg County grand jury indicted Plaintiff at case number 2021-GS-42-0704 for the crime of domestic violence, second degree. ECF No. 36-10 at 2. That indictment charged Plaintiff as follows:

> On April 18, 2019, the Defendant, Travis Hamrick, did in Spartanburg County, commit the crime of Domestic/Domestic violence in the second degree, in that the Defendant, did offer or attempt to inflict bodily injury to a household member, while blocking access to a cell phone; to wit, the Defendant and the victim are former household members, and the Defendant threw a glass cup towards the victim while threatening to kill the victim and taking her phone away, in violation of § 16-25-20(C), Code of Laws of South Carolina, (1976, as amended).
>
> Against the peace and dignity of the State, and contrary to the statute in such case made and provided.

ECF No. 36-10 at 3. The Spartanburg County indictment was *nolle prossed* on January 6, 2022. ECF No. 36-10 at 2.

On August 18, 2021, the South Carolina State grand jury indicted Plaintiff at case number 2021-GS-42-4772 for the crime of breach of peace of a high and aggravated nature. ECF No. 36-10 at 4. That indictment charged Plaintiff as follows:

> That TRAVIS HAMRICK did in Spartanburg County on or about April 18, 2019, did unlawfully engage in conduct with the intent of disturbing and breaking the peace, utter menaces or threatening speeches and act disorderly, in violation of § 22-5-150, Code of Laws of South Carolina. These acts were done in a high and aggravating nature such that the disturbance was meant to incite witnesses based upon religious and societal insults and disturbing and vulgar language and comments potentially causing fear and violence to the distress of the community. Against the peace and dignity of the State, and contrary to the statute in such cases made and provided.

11

ECF No. 36-10 at 5. Plaintiff was found not guilty of that charge on January 6, 2022. ECF No. 36-10 at 4.

**South Carolina Criminal Domestic Violence Statute**

As noted, Plaintiff was arrested pursuant to a warrant that charged him with criminal domestic violence, second degree. The South Carolina criminal domestic violence statute provides as follows:

> (A) It is unlawful to:
>
>> (1) cause physical harm or injury to a person's own household member; or
>> (2) offer or attempt to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril.

S.C. Code Ann. § 16-25-20(A). Under the statute,

> A person commits the offense of domestic violence in the third degree if the person violates subsection (A).

S.C. Code Ann. § 16-25-20(D). The statute defines second degree domestic violence as follows:

> (C) A person commits the offense of domestic violence in the second degree if the person violates subsection (A) and:
>
>> (1) moderate bodily injury to the person's own household member results or the act is accomplished by means likely to result in moderate bodily injury to the person's own household member;
>> (2) the person violates a protection order and in the process of violating the order commits domestic violence in the third degree;
>> (3) the person has one prior conviction for domestic violence in the past ten years from the current offense; or
>> (4) in the process of committing domestic violence in the third degree one of the following also results:
>>
>>> (a) the offense is committed in the presence of, or while being perceived by, a minor;

(b) the offense is committed against a person known, or
who reasonably should have been known, by the
offender to be pregnant;

(c) the offense is committed during the commission of a
robbery, burglary, kidnapping, or theft;

(d) the offense is committed by impeding the victim's
breathing or air flow; or

(e) the offense is committed using physical force or the
threatened use of force against another to block that
person's access to any cell phone, telephone, or
electronic communication device with the purpose of
preventing, obstructing, or interfering with:

(i) the report of any criminal offense, bodily injury,
or property damage to a law enforcement agency;
or

(ii) a request for an ambulance or emergency medical
assistance to any law enforcement agency or
emergency medical provider.

S.C. Code Ann. § 16-25-20(C).

**Applicable Law for Malicious Prosecution Claim**

Plaintiff asserts a claim for malicious prosecution. The Fourth Amendment to the United

States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV.

"A 'malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment

claim for unreasonable seizure which incorporates certain elements of the common law tort.'"

*Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (quoting *Lambert v. Williams*, 223 F.3d 257,

261 (4th Cir. 2000)). "[T]he gravamen of the Fourth Amendment claim for malicious prosecution

. . . is the wrongful initiation of charges without probable cause." *Thompson v. Clark*, 596 U.S.

36, 43 (2022). "To succeed on such a claim, a plaintiff must show that a government official

charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini*

*v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024). "'Allegations that an arrest made pursuant

to a warrant was not supported by probable cause, or claims seeking damages for the period after

13

legal process issued'—e.g., post-indictment or arraignment—are considered a § 1983 malicious prosecution claim." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996)).

To prevail on a claim for malicious prosecution, a plaintiff must show that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans*, 703 F.3d at 646. "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "[A] Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson*, 596 U.S. at 49.

When presented with allegations that an individual was arrested without probable cause due to false or misleading information supplied in a warrant application, courts have treated such claims as malicious prosecution claims. *See, e.g.*, *English v. Clarke*, 90 F.4th 636, 647–48 (4th Cir. 2024) (analyzing the appellant's claim that that he was unlawfully detained pursuant to a warrant that was obtained using deliberately misleading information as a malicious prosecution claim); *Humbert*, 866 F.3d at 555–561 (construing the appellant's § 1983 claim, which alleged his arrest was unsupported by probable cause because it resulted from a materially false warrant application, as a malicious prosecution claim); *Porterfield v. Lott*, 156 F.3d 563, 570 (4th Cir. 1998) (treating allegations that a warrant was invalid due to being based on falsehoods as a malicious prosecution claim). When challenging the veracity of a warrant application, the plaintiff

must show that the officer deliberately or with a "reckless disregard for the truth" made materially false statements in the warrant application, *Franks v. Delaware*, 438 U.S. 154, 171 (1978), or omitted "material facts with the intent to make, or with reckless disregard of whether they thereby made, the [application] misleading." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). False statements or omissions are material if they are necessary to the finding of probable cause. *Humbert*, 866 F.3d at 556; *see also Fox v. Lemon*, 911 F.2d 722, 1990 WL 116561 *2 (4th Cir. 1990) (determining "[a] police officer can only be found liable under § 1983 for causing an unconstitutional arrest if 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable'") (quoting *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986), which stated "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of [qualified] immunity be lost"); *see also Dukes v. Addison*, C/A No. 4:24-cv-01771-TMC, 2025 WL 1141220, at *3, n.4 (D.S.C. Apr. 18, 2025).

**Probable Cause**

Defendant argues that Plaintiff's malicious prosecution claim fails as a matter of law because probable cause existed to support Plaintiff's arrest. ECF No. 36-1 at 8–11.

Based on Bailey and Leon's statements, Defendant's own observations while at Plaintiff's home, and the other information that Defendant gathered during the course of his investigation, Defendant believed that Plaintiff violated § 16-25-20(C) of the domestic violence statute. Defendant presented evidence to a neutral magistrate judge and obtained a facially valid arrest warrant. Plaintiff was arrested pursuant to that warrant. For the reasons explained below, the undersigned finds that probable cause existed and that the investigative materials and the warrant did not contain false or misleading statements or omit a material fact that would have negated

probable cause for arresting Plaintiff. *See Decina v. Horry Cnty. Police Dep't*, 557 F. Supp. 3d 716, 723 (D.S.C. 2021) (evaluating probable cause under similar circumstances for a charge of second degree domestic violence), *aff'd,* No. 21-2171, 2023 WL 2136376 (4th Cir. Feb. 21, 2023). Reviewing the evidence in the record in the light most favorable to Plaintiff, the Court cannot conclude that Defendant had information from which a reasonable and prudent police officer could not conclude there was probable cause to support the arrest.

"[P]robable cause to institute proceedings constitutes a complete defense to malicious prosecution claims." *Caraway v. City of Pineville*, 639 F. Supp. 3d 560, 579 (W.D.N.C. 2022), *aff'd*, 111 F.4th 369 (4th Cir. 2024); *see also Plantan v. Smith*, C/A No. 3:22-cv-407, 2024 WL 3047993, at *13 (E.D. Va. June 18, 2024) ("Probable cause serves as a complete defense to an action for malicious prosecution . . ." (citation omitted)). "Probable cause requires facts and circumstances sufficient to warrant a prudent person to believe that the suspect has committed or is committing a crime." *McNeil v. Aug.*, C/A No. 4:07-cv-542-TLW-TER, 2008 WL 5235849, at *3 (D.S.C. Dec. 12, 2008). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *Porterfield v. Lott,* 156 F.3d 563, 569 (4th Cir. 1998) ("Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict.").

"In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). Reasonable law enforcement officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991). Probable cause will be found when "the facts and circumstances within an

officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold,* 214 F.3d 535, 539 (4th Cir. 2000). "'Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* A court's inquiry should be made based on the information possessed by the officer at the time of the arrest or that was reasonably available to him at the time of arrest, and "in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett*, 973 F.2d at 312. When a plaintiff alleges a lack of probable cause for an arrest, he "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff was involved in the charged offense. *Brown*, 278 F.3d at 368 (4th Cir. 2002).

### *The Grand Jury Indictments*

As an initial matter, an indictment, "'fair upon its face,' returned by a 'properly constituted grand jury,'" is conclusive evidence that an officer had probable cause to arrest. *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (quoting *Gerstein v. Pugh*, 420 U.S. 103, (1975)). For that reason, a police officer will not be liable for an unlawful seizure post-indictment. *Evans*, 703 F.3d at 648 (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). "But there is an exception to this rule, namely when an officer 'misled or pressured the prosecution.'" *Harris v. Town of S. Pines*, 110 F.4th 633, 643 (4th Cir. 2024) (citations omitted).

Here, there is no dispute that Plaintiff was indicted on the charges brought against him. ECF No. 36-10. Defendant testified at his deposition that he did not present the case to the grand jury. ECF No. 36-5 at 38. Defendant acknowledged, however, that he assumed his incident report and the warrant may have been presented to the grand jury. *Id*. at 39.

The indictments against Plaintiff conclusively determine the existence of probable cause as to those indicted charges. *See, e.g.*, *Kaley v. United States*, 571 U.S. 320, 328 (2014) ("[A]n indictment 'fair upon its face,' and returned by a 'properly constituted grand jury,' we have explained, 'conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged." (citations omitted)); *Smith v. Munday*, 848 F.3d 248, 255 (4th Cir. 2017) ("By law, 'an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause.'" (citations omitted)); *Norton v. Tabron*, 727 F. App'x 762, 765 (4th Cir. 2018) (affirming dismissal of the plaintiff's Fourth Amendment claims because the grand jury indictments against him "conclusively determine[d] the existence of probable cause" to support his arrest and prosecution). There is no evidence that Defendant played any role in securing the indictments against Plaintiff, other than to author the incident reports and secure the arrest warrant. Plaintiff has also failed to present any evidence that they actually were presented to the grand jury. Even if that Defendant's incident reports and the arrest warrant were used in the grand jury proceedings, Plaintiff has not shown that Defendant influenced or pressured the prosecutors in any way to secure the indictments against Plaintiff.

### The Warrant

Plaintiff's claim against Defendant focuses primarily on the procurement of the arrest warrant, despite the issuance of the grand jury indictments noted above. The Complaint alleges

that, when Defendant applied for the arrest warrant, he willfully provided a false affidavit as to three particulars, in that he alleged as follows:

- Defendant alleged that Plaintiff threatened Bailey when it was clear to Defendant that Bailey alleged Plaintiff expressed a hypothetical plan to kill Bailey without any present intent to act on such a place and when Defendant understood it was not a threat and certainly not an offer or attempt to harm Bailey.

- Defendant alleged that Plaintiff threw a glass at Bailey, narrowly missing her head, when Defendant knew that Bailey alleged Plaintiff threw a glass over her head, but she never said the glass narrowly missed her.

- Defendant alleged that Plaintiff took Bailey's phone, knowing that Bailey had denied that it was for the purpose of preventing her from calling authorities and Defendant's failure to disclose this denial to the magistrate judge was deceptive and amounts to a false statement.

ECF No. 1 at 6–7, ¶ 17. According to Plaintiff, these three alleged defects establish that probable cause did not exist to support the arrest warrant. *See generally*, ECF No. 38. The Court addresses each of these three contentions in turn below.

### *Threatening Harm*

Plaintiff contends that Defendant should have understood that Plaintiff's statements to Bailey were not a threat and certainly were not an offer or attempt to harm Bailey. However, that contention is controverted by Defendant's body camera recording. In that recording, Bailey made the following statements, among others:

> [Plaintiff] came outside and said he thinks about murdering people, and he has a way to murder people, at least three ways. And I said, "Ok, are you going to murder me? How?" And he says, "in a bad way." So, at that point I was scared to the point I was shaking. I walked inside with my keys and my phone, and he ripped them out of my hand, and he told me I could go with my clothes, to get an

> Uber, he didn't care, just to get the hell out. At that point, [Leon] came out because he realized I was unsafe, so [Leon] came down from upstairs. . . . [Plaintiff] followed me while I was trying to come out here just to get away from him . . . he followed me out. He was eating chicken and spitting it in my face. . . . I tried to calm him down. At that point, he went inside, then came back out. Just typical belligerent behavior. But the difference was that I've seen him go belligerent but never has he ever gotten in my face like that. Never has he said anything about hurting me. He was back and forth, saying I'll never hurt you and, then, saying if I murder you, it would be in a bad way.

ECF No. 36-6 (Body Camera) at 44:54–46:55. At that point, Bailey was asked if she thought

Plaintiff would ever hurt her. *Id*. at 46:56–46:58. Bailey responded as follows:

> What I'm saying is I never thought so until today. And tonight, I fear for my safety. To the point that I have been shaking out of control. . . . I cannot sit back and let this guy be a danger . . . to me.

*Id*. at 46:59–47:30. Bailey went on to explain that

> [Plaintiff] was getting in my face and stuff, and I walked away because he was literally like spitting in my face, he's that close, and I was like ok I can leave, and he was like "well, if you do," and he grabbed my phone, my laptop, and my keys and took off and held them. And then we went inside and that's when he broke the glasses and after that, he threw the glasses, which is why I walked away but the fence kept me kind of stuck in there. And then in front of [Leon] he said that he was numb and he started crying and he said he couldn't feel anything, and he couldn't feel love and there was no helping him and he just wanted to die. And then he threw the glasses, broke them, and then I went outside, and he followed me out there. And that's when he said he has always at least three ways to kill somebody. And I said, well—like I was trying to figure out is, am I to be concerned—and I was like, "well, you would kill me how?" And he was like "Well, it would be in a very bad way."

*Id*. at 1:19:55–1:21:05. Bailey then stated to Defendant, "I'm scared," and explained that Plaintiff

had guns in the house. *Id*. at 1:21:09–1:21:12.

When Defendant asked if Plaintiff had threatened Bailey, Leon stated that Plaintiff said

"he would murder [Bailey] in an unkind way." *Id*. at 00:07:28. Leon said he was concerned

because Plaintiff directly threatened Bailey's life, prompting him to call 911. *Id*. at 00:35:45.

Leon also made the following statement to Defendant:

> The reason I called [911] was because I was afraid for [Bailey's] life because [Plaintiff] was acting—I've known [Plaintiff] for years and tonight was just so far beyond the point of being ok. . . . I just wanted everything to be ok. I didn't want anybody to get harmed. When he's over there talking all sorts of hate speech talking about killing people, man that's not ok.

*Id*. at 1:06:46–1:07:12. Seningen stated to Defendant that Plaintiff had grabbed his arm and told him "it's probably not going to be safe for you to stay here." *Id*. at 00:33:50–00:33:56.

Based on these statements, a reasonable officer could have understood that Plaintiff's statements were a present threat to Bailey such that his actions constituted an "offer or attempt to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril."

### *Throwing the Glass*

Plaintiff contends that Defendant falsely alleged in the warrant affidavit that Plaintiff threw a glass at Bailey, narrowly missing her head, when Defendant knew that Bailey alleged Plaintiff threw a glass over her head, but she never said the glass narrowly missed her. That contention is also without merit.

Bailey repeatedly stated during her interaction with Defendant that Plaintiff threw a glass at her, which went over her head. Plaintiff takes issue with the assertion in the warrant affidavit stating the glass "narrowly missed striking" Plaintiff's head. Defendant testified at his deposition that none of the witnesses used the word "narrowly" and that the wording in the warrant affidavit was meant to describe how Defendant understood the statements that were made by Bailey. ECF No. 36-5 at 35. Nevertheless, the use of the phrase "narrowly missed striking" as contained in the warrant affidavit, is insufficient to negate probable cause because, even "without the statement,

21

the affidavit contained ample evidence to support probable cause." *United States v. Garrett*, C/A No. 5:21-cr-201-D, 2025 WL 3161675, at *14 (E.D.N.C. Nov. 12, 2025). The statement "narrowly missed striking" is not false or misleading, even if it was not precisely uttered by any witness. The fact remains that Bailey stated repeatedly Plaintiff threw a glass, which went over her head. Plaintiff's conduct of throwing a glass at Bailey—whether it narrowly missed striking her head or not—is the operative conduct. The inclusion of that conduct within the warrant affidavit was not false or misleading and is evidence to support a finding of probable cause for the charge of domestic violence.[4]

### *Taking the Phone*

Finally, Plaintiff contends that Defendant improperly alleged in the warrant affidavit that Plaintiff took Bailey's phone, knowing that Bailey had denied that it was for the purpose of preventing her from calling authorities and Defendant's failure to disclose this denial to the magistrate judge was deceptive and amounts to a false statement.

As described above, Bailey repeatedly explained to Defendant that Plaintiff took her phone. She also stated that she had no way to call anyone without her phone and so she could not leave. Bailey also stated numerous times that Plaintiff said if law enforcement came, he planned to shoot them. *See, e.g.*, ECF No. 36-6 (Body Camera), 00:27:28. Leon also confirmed that he heard Plaintiff make such statements. *Id.* at 01:09:35. Leon further explained that Plaintiff kicked him out of the house because he contacted law enforcement. *See, id.* at 01:07:32 (Leon stating, "Me and [Seningen] got kicked out just for speaking to Officer Knapp"). During the early minutes of

---

[4] Further, neither of the indictments include the "narrowly missed striking" language that is challenged. The omission of that language from the indictments indicates that the term was not material to the determination of probable cause by two separate grand juries.

the encounter captured on the body camera, Plaintiff approached Defendant, who was speaking to

Leon and Seningen, and made the following statement:

> And you two fucking assholes can get the fuck out of my house too.
> Bye.  Bye.  Yeah, you can get the fuck out.  Bye.  That's what that
> means [Seningen].  That's what that means [Leon].  You can get the
> fuck out too.  Yeah, yeah, you can leave right now.  You want to
> talk to the police?  You want to talk about anything?  Get the fuck
> out bro.  . . .  These two assholes are gone.  . . .  They can find
> somewhere else to live.  . . .  These two assholes can get the fuck out
> because they're over here talking to [the police].  . . .  Those two
> fucking morons can get the fuck out since they want to talk to you
> and they called the police.  . . .  Those two fucking morons who
> called the police can leave.

ECF No. 36-6 (Body Camera), 00:00:52–00:03:16.

In light of all of Plaintiff's statements, as recounted by Bailey and Leon, as well as

Plaintiff's statements made in the presence of Defendant, it was reasonable for Defendant to

understand that Plaintiff made attempts to prevent Plaintiff from contacting law enforcement,

including by taking her phone.  "Probable cause is not a high bar and officers are not required to

rule out a suspect's explanation of the facts in order to obtain a warrant."  *Wilson v. S.C. L. Enf't

Div.*, C/A No.  4:22-cv-02312-JD-KDW,  2023  WL  6638989,  at  *8  (D.S.C.  July  31,  2023)

(evaluating probable cause determination for charge of South Carolina domestic violence, second

degree) (citing *United States v. Blakeney*, 949 F.3d 851, 859 (4th Cir. 2020)), *R&R adopted by*

2023 WL 6172250 (D.S.C. Sept. 22, 2023), *appeal dismissed*, No. 23-2122, 2024 WL 1752082

(4th Cir. Apr. 2, 2024).  Plaintiff's explanation of the reasons why he took the phone, after the

matter, are insufficient to negate Defendant's understanding at the time and assessment of all the

facts and circumstances presented to him.

**Conclusion**

"The investigating officer's job is to present the facts known to him at the time the warrant is presented, and there is undisputed evidence that Defendant [] did just that."  *Decina*, 557 F. Supp. 3d at 727.  Plaintiff has failed to show that the warrant affidavit contained false or misleading statements such that probable cause did not exist to support the warrant.  Therefore, the Court finds that probable cause existed to support the arrest warrant issued against Plaintiff.  Because the Court finds that probable cause existed, Plaintiff's malicious prosecution claim fails, and Defendant is entitled to judgment as a matter of law.  The Court therefore does not consider Defendant's remaining arguments in support of summary judgment.

<u>**CONCLUSION AND RECOMMENDATION**</u>

Based on the foregoing, Defendants' Motion for Summary Judgment (ECF No. 36) should be **GRANTED**.

**IT IS SO RECOMMENDED**.

s/William S. Brown<br>
United States Magistrate Judge

November 21, 2025
Greenville, South Carolina

*The Parties' attention is directed to the important notice on the following page.*

24

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).